FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 NOV -2  PM 3:57

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRENT J. HOLLAND** | **CIVIL ACTION** |
| **VERSUS** | **No. 04-3028** |
| **PROSPER P. BREAUX, et al.** | **SECTION: I/5** |

### ORDER AND REASONS

The matter before the Court is a motion, filed on behalf of defendant, Prosper Breaux ("Breaux"), seeking summary judgment pursuant to Rule 56(c)[1] of the Federal Rules of Civil Procedure. Plaintiff, Brent Holland ("Holland"), opposes the motion. For the following reasons, defendant's motion for summary judgment is **GRANTED**.

### *BACKGROUND*

On May 16, 2000, plaintiff Holland purchased a house, located at 18120 Hosmer Mill Road, Covington, Louisiana, from defendant Breaux.[2] The house is a single family dwelling and has

---

[1] Rule 56(c) provides, in pertinent part, that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

[2] Rec. Doc. No. 30, p. 1.

1

several adjacent structures.[3] The defendant bought the land in 1984; he designed the home with his son-in-law, a student of architecture, and the house was completed in 1986.[4] Defendant lived in the home until 1999.[5] Plaintiff purchased the house in 2000 for $1,100,000, and he moved into the dwelling approximately one year later.[6] Prior to the sale, in order to determine the replacement value of the home, plaintiff arranged for an appraisal of the property by a representative of The Chubb Group. Plaintiff did not, however, have any structural assessment or formal inspection of the house performed before executing the sale.[7]

In late November, 2003, plaintiff noticed that the walls in the house were cracking, the floor in two rooms was beginning to sag and separate, and doors were settling.[8] Plaintiff's initial investigation revealed that the floor joists and piers under the house were wet and rotten. In addition, plaintiff found that a dryer exhaust was venting hot, moist air into the crawl space below the house.[9] Access to the crawl space was gained through openings measuring 16 inches by 36 inches.[10] Plaintiff also found sump pumps under the house and discovered that the floor joists had been built using

---

[3]Rec. Doc. No. 30, p. 5.

[4]Rec. Doc. No. 30, p. 5.

[5]Rec. Doc. No. 30, p. 5.

[6]Rec. Doc. No. 30, pp. 5-6.

[7]Rec. Doc. No. 30, Pl.'s Ex. 2, pp. 9-10.

[8]Rec. Doc. No. 30, pp. 3, 6.

[9]Rec. Doc. No. 30, pp. 3, 6.

[10]Rec. Doc. No. 30, p. 7.

untreated lumber.[11] The property was inspected by an insurance adjuster prior to January 20, 2004, by Vanderbrook Engineering on January 31, 2004, and finally H & H Engineering, Inc. in March, 2004.[12]

Plaintiff filed his complaint on November 5, 2004, against Breaux, alleging that defendant's actions had caused "diminution in value of the home," repair costs, mental anguish, anxiety, and undue stress.[13] Plaintiff seeks damages "to compensate plaintiff for his injuries, losses, and damages, plus interest from date of judicial demand until paid and all costs of these proceedings."[14] Plaintiff invokes this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Defendant's motion for summary judgment presents three main arguments: (1) the rotting floor joists in the house were not a latent defect and thus cannot support the plaintiff's redhibitory claim; (2) plaintiff waived his right to bring redhibitory claims; and (3) plaintiff's claim is prescribed.

## *LAW AND ANALYSIS*

### *I. Standard of Law*

Summary judgment is proper when, after reviewing the "pleadings, depositions, answers to interrogatories . . . [and] affidavits," the court determines that there is an issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it

---

[11]Rec. Doc. No. 30, pp. 6-8.

[12]Rec. Doc. No. 30, pp. 7-9.

[13]Rec. Doc. No. 1, ¶ 18.

[14]Rec. Doc. No. 1, p. 4.

3

believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266, 274 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986) (internal quotation omitted).

Once the party seeking the summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986). The showing of a genuine issue is not satisfied by creating some metaphysical doubt as to the material facts by conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211-12 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The non-moving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731, 741 (1999) (internal quotation and citation omitted) (alternation in original).

*II. Arguments*

    *A. Redhibitory Defect*

4

Defendant argues that, because the house's defects were apparent, plaintiff's claim for redhibition must fail.  When a federal court exercises diversity jurisdiction pursuant to 28 U.S.C. § 1332, the court must apply the substantive law of the forum state.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 822, 82 L. Ed. 1188, 1194 (1938).

A claim in redhibition requires the plaintiff to prove: (1) the thing sold is useless for its intended purpose or so inconvenient that it must be assumed that plaintiff would not have purchased the item had he had knowledge of the defect; (2) the defect existed at the time of sale[15]; and (3) the seller was given an opportunity to repair the defect[16].  *Johnson v. CHL Enters.*, 115 F. Supp. 2d 723, 728 (W.D. La. 2000) (citing *Watkins v. Freeway Motors*, 691 So. 2d 854, 857 (La. App. 2d Cir. 1997)); *Carrol v. Coleman*, 666 So. 2d 1264, 1266 (La. App. 2d Cir. 1996); *Purvis v. Statewide Trailer Sales, Inc.*, 339 So. 2d 403, 407 (La. App. 1st Cir. 1976) (citing La. Civ. Code Ann. arts. 2520-22, 2530-31).

"Generally, the seller warrants the thing sold against hidden or non-apparent defects." *McGough v. Oakwood Mobile Homes, Inc.*, 779 So. 2d 793, 800 (La. App. 2d Cir. 2000) (citing La. Civ. Code Ann. arts. 2745, 2521).  A seller's warranty against redhibitory defects does not extend, however, to "defects in the thing that were known to the buyer at the time of the sale, or for defects that should have been discovered by a reasonably prudent buyer of such things." La. Civ. Code Ann.

---

[15]Proof that the defect existed at the time of sale may be made "not only by direct evidence of eyewitnesses, but also by circumstantial evidence giving rise to the reasonable inference that the defect existed at the time of sale." *Rey v. Cuccia*, 298 So. 2d 840, 843 (La. 1974).

[16]Where the seller acts in bad faith, however, there is no need for the buyer to provide an opportunity to repair the defect.  *Dickerson v. Begnaud Motors, Inc.*, 446 So. 2d 536, 539 (La. App. 3d Cir. 1984) (citing La. Civ. Code Ann. arts. 2531, 2545).

5

art. 2521; *see also* La. Civ. Code art. 2475 ("The seller is bound to deliver the thing sold and to warrant to the buyer . . . the absence of hidden defects in . . . that thing."). Apparent defects are those that can be discovered by simple inspection. *Nesbitt v. Dunn*, 672 So. 2d 226, 234 (La. App. 2d Cir. 1996). Simple inspection requires "more than mere casual observation; it requires the buyer who observes defects to conduct further investigation as would be conducted by a reasonably prudent buyer acting under similar circumstances." *McGough*, 779 So. 2d at 801 (citing *Rey*, 298 So. 2d at 840). The buyer is not, however, "required to examine inner or hidden parts of the thing for the purpose of finding latent defects." *In re Air Bag Prods. Liab. Litig.*, 7 F. Supp. 2d 792, 798 (E.D. La. 1998) (quoting *Nesbitt*, 672 So. 2d at 234).

Defendant argues that the defects in the foundation of the house were apparent and would have been revealed during a simple inspection.[17] Plaintiff's allegations as to what would have been required to observe these defects, however, create a genuine issue of material fact. Plaintiff states that he "viewed the property with his father" before purchasing the house.[18] Plaintiff explains that the openings to the house's foundation were 18 inches high or less and that it would have been necessary to remove the insulation from the wood joists to observe the rotting.[19] The reasonable inspection demanded by Louisiana law does not require a buyer to "inspect with expertise or to deface the thing purchased while inspecting it." *McGough*, 779 So. 2d at 801. Considering the difficulty in accessing the house's foundation and the concealed nature of the rotting floor joists, the

---

[17]Rec. Doc. No. 23, p. 6 ("[T]he simple fact remains that the inadequacy of the 'crawl space' is <u>not</u> a latent defect, but one that can be readily observed by the naked eye.").

[18]Rec. Doc. No. 30, p. 3.

[19]Rec. Doc. No. 30, p. 16.

6

house's defects may not have been apparent to a reasonable buyer conducting a simple inspection. Therefore, plaintiff's assertions create a genuine issue of material fact such that a reasonable jury could find that the house's deficiencies constitute a redhibitory defect.[20]

### B. Waiver of Redhibition

Defendant argues that plaintiff waived his rights to sue for redhibitory defects.[21] Plaintiff agrees that the purchase agreement he signed prior to the sale of the house indicated that the property was being sold "as is with a waiver of redhibition"; he also concedes that the act of sale he signed contained a similar waiver.[22] Plaintiff, however, contends that because defendant knew of the foundation's defects and failed to notify him, the waiver is invalid.[23] Plaintiff also alleges that he did not understand the waiver when he signed it.[24]

### 1. Defendant's knowledge of redhibitory defects

Louisiana law does allow parties to waive their redhibition rights. La. Civ. Code Ann. art. 2548. Such a waiver, however, must be "clear and unambiguous and must be brought to the

---

[20] Defendant points out that plaintiff observed cracks in the walls of the house prior to the sale and suggests that, because plaintiff failed to investigate these cracks more fully, plaintiff failed to perform the simple inspection required by Louisiana law. Rec. Doc. No. 23, pp. 8-9. Plaintiff contends, however, that he mistook such cracks for the marks of drying paint. Rec. Doc. No. 30, p. 14; Pl.'s Ex. 2, p. 18. The Court finds that plaintiff's observation of what appeared to be cosmetic defects would not necessarily suggest that any defects existed in the house's foundation. *See, e.g*, *McGough*, 779 So. 2d at 801 (finding that plaintiff's knowledge of water stains on walls of mobile home did not imply knowledge of a roof defect that could not be discovered by simple inspection)

[21] Rec. Doc. No. 23, p. 9.

[22] Rec. Doc. No. 30, p. 17.

[23] Rec. Doc. No. 30, pp. 17-20.

[24] Rec. Doc. No. 30, pp. 19-20.

7

attention of the buyer." *Id.* However, Article 2548 provides that a buyer will not be bound by a waiver of redhibition where "the seller has declared that the thing has a quality that he knew it did not have." *Id.*; *see also Shelton v. Standard/700 Assocs.*, 798 So. 2d 60, 64 (La. 2001) ("[A] seller cannot contract against his own fraud and relieve himself of liability to fraudulently induced buyers."). "A seller with knowledge of a redhibitory defect who, rather than informing the buyer of the defect, opts to obtain a waiver of the warranty implied by law, commits fraud, which vitiates the waiver because it is not made in good faith."[25] *Helwick v. Montgomery Ventures Ltd.*, 665 So. 2d 1303, 1306 (La. App. 4th Cir. 1995) *cited in Frey v. Walker*, 807 So. 2d 887, 893 (La. App. 5th Cir. 2001); *see also* La. Civ. Code Ann. art. 2545 ("A seller who knows that the thing he sells has a defect but omits to declare it . . . is liable to the buyer for the return of the price with interest from the time it was paid . . . .").

In a redhibition case, a fraud allegation must be supported by showing "(1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to (a cause of) the contract." *Shelton*, 798 So. 2d at 64. Such a showing also requires that "the circumstances constituting fraud must be alleged with particularity." *Id.* (citing La. Code Civ. Proc. Ann. art. 856). Fraud will vitiate a waiver of redhibition unless "the party against whom the fraud was directed

---

[25]A seller's constructive knowledge of a defect will similarly void a waiver of redhibition. *Boos v. Benson Jeep-Eagle Co.*, 717 So. 2d 661, 665 (La. App. 4th Cir. 1998) ("If the vendor should have known of the undisclosed defect, i.e., if the vendor had mere constructive knowledge of the undisclosed defect, it is sufficient to void the waiver of warranty.").

could have ascertained the truth without difficulty, inconvenience, or special skill."[26] *Id.*

Plaintiff attempts to raise issues of fact to suggest defendant may have known of defects in the house at the time of the sale. Plaintiff alleges that, because defendant was involved in the design and construction of the house, defendant would have known that the foundation of the home was constructed with untreated lumber, that the house suffered from drainage problems severe enough to require sump pumps be installed in the crawl space, and that the dryer had been vented into the crawl space.[27] In response to an interrogatory asking "at whose instruction were such pumps placed," defendant admits that it was "Bob Frazier and Prosper Breaux."[28] Defendant also stated that he did "not recall whether plaintiff was told where the sump pumps were located."[29] Nor did defendant recall who was responsible for selecting untreated lumber for use in the construction of the house's subfloor.[30]

Plaintiff, however, has not provided any evidence to suggest that defendant knew of the house's structural defects, including its rotting subfloor and floor joists, at the time of the sale. Plaintiff's averments regarding the untreated lumber, sump pumps, and dryer vent, even when taken to be true, do not suggest defendant's knowledge, actual or constructive, of the redhibitory defect. To the contrary, the record shows that defendant experienced none of the structural problems about

---

[26]"However, this exception does not apply when a relation of confidence has reasonably induced a party to rely on the other's assertions or representations." *Shelton*, 798 So. 2d at 64 (citing La. Civ. Code Ann. art. 1954).

[27]Rec. Doc. No. 30, pp. 9-13.

[28]Rec. Doc. No. 30, p. 12; Pl.'s Ex. 9.

[29]Rec. Doc. No. 30, p. 12; Pl.'s Ex. 9.

[30]Rec. Doc. No. 30, Pl.'s Ex. 6, p. 5.

which plaintiff complains.[31]

Plaintiff presents evidence that defendant, prior to the sale of the house, contacted civil engineer Darrell Fussell regarding drainage problems on Breaux's property.[32] Fussell stated in his deposition, however, that his consultation was limited to the issue of surface water drainage, not any issue with the floor joists or crawl space.[33] Even assuming that defendant had notice of a moisture problem in the crawl space, the evidence is insufficient to show that defendant had actual or constructive knowledge of the severity of the problem, which plaintiff admits "was not determined until the house began to collapse."[34] *See, e.g., Sterbcow v. Peres*, 222 So. 2d 195, 200 (La. 1953) (holding that defendant seller's knowledge of crack in wall of building did not put defendant on notice of redhibitory defects); *Ward v. Kemp*, 539 So. 2d 1291, 1293 (La. App. 3d Cir. 1989) (finding sellers did not have constructive knowledge of roof defects where roof had not leaked since its repair six years prior to sale); *Coleman Oldsmobile, Inc. v. Newman & Assocs.*, 477 So. 2d 1155, 1160 (La. App. 1st Cir. 1985) (affirming trial court's decision that the "minor service work" performed on car was insufficient to show defendant should have been aware of the alleged redhibitory defects in car's engine). Plaintiff does not present evidence that defendant had any prior inspection of the house's foundation performed or was in any way on notice of problems in the crawl space. Nor does plaintiff provide evidence to show that defendant actively concealed any alleged defects in the house's foundation. The Court finds no genuine issue of material fact as to

---

[31] Rec. Doc. No. 30, Pl.'s Ex. 6, p. 7.

[32] Rec. Doc. No. 30, p. 11.

[33] Rec. Doc. No. 30, Pl.'s Ex. 8, p. 6.

[34] Rec. Doc. No. 30, p. 10.

10

defendant's knowledge of the house's defects sufficient to void plaintiff's waiver of redhibition.

*2. Effectiveness of plaintiff's waiver of redhibition*

Plaintiff also argues that his waiver of redhibition rights is void because he did not understand the terms of the waiver and because the waiver was not clear and unambiguous. Plaintiff correctly notes that, for a waiver of redhibition to be effective, the waiver must be: 1.) written in clear and unambiguous terms, 2.) contained in the sale document, and 3.) brought to the attention of the buyer or explained to him. *Hendricks v. Horseless Carriage, Inc.*, 332 So. 2d 892, 894 (La. App. 2d Cir. 1976). The requirement that the waiver be "clear and unambiguous" demands that "the language used must be comprehendible by the average buyer." *Thibodeaux v. Meaux's Auto Sales, Inc.*, 364 So. 2d 1370, 1371 (La. App. 3d Cir. 1978).

The waiver of redhibition that plaintiff signed meets all of the *Hendricks* requirements. The waiver is titled an "As Is" clause, and it appears on a separate page attached to the purchase agreement.[35] The "As Is" title is underlined and in large, bold type. The waiver states in pertinent part:

> It is expressly agreed that the immovable property herein conveyed and all improvements . . . are conveyed by Seller and accepted by Purchaser "AS IS, WHERE IS," without any warranties of any kind whatsoever, even as to the metes and bounds, zoning, operation, or suitability of such properties for the use intended by the Purchaser, without regard to the presence of apparent or hidden defects and with the Purchaser's full and complete waiver of any and all rights for the return of all or any part of the purchase price by reason of any such defects.
>
> Purchaser acknowledges and declares that neither the Seller nor any party . . . has made any direct, indirect, explicit or implicit statement, representation or declaration, whether by written or oral statement or otherwise, and upon which Purchaser has relied, concerning the existence or non-existence of any quality, characteristic or condition of the property herein conveyed. Purchaser has had full, complete and

---

[35] Rec. Doc. No. 23, Def.'s Ex. C.

> unlimited access to the property herein conveyed for all tests and inspections which Purchaser, in Purchaser's sole discretion deems sufficiently diligent for the protection of Purchaser's interests.
>
> Purchaser expressly waives the warranty of fitness and the warranty against redhibitory vices and defects, whether apparent or latent, imposed by Louisiana Civil Code Articles 2520 through 2548, inclusive, and any other applicable state or federal law and the jurisprudence thereunder.
>
> Purchaser also waives any rights Purchaser may have in redhibition or to a reduction of the purchase price pursuant to Louisiana Civil Code Articles 2520 through 2548, inclusive, in connection with the property hereby conveyed to Purchaser by Seller. By Purchaser's signature Purchaser expressly acknowledges all such waivers, and Purchaser's exercise of Purchaser's right to waive warranty pursuant to Louisiana Civil Code Articles 2520 through 2548, inclusive.

The waiver explains that the purchaser agrees to accept the property "without any warranties of any kind whatsoever . . . [and] without regard to the presence of apparant or hidden defects." It states that "[p]urchaser acknowledges and declares that neither the Seller nor any party . . . has made any . . . representation . . . concerning the existence or non-existence of any quality, characteristic or condition of the property." The waiver further notes that the "[p]urchaser also waives any rights Purchaser may have in redhibition." A separate notation of the waiver also appears in the purchase agreement,[36] and the notarized act of sale also contains a mention of the waiver.[37] Plaintiff's signature at the bottom of the purchase agreement and the "As Is" clause, as well as his initials next to the waiver paragraph in the Act of Sale, all show that the waiver was brought to his attention.

---

[36]Rec. Doc. No. 23, Def.'s Ex. A, p. 2 ("Additional Terms and Conditions: property sold 'as is with a waiver of redhibition.'").

[37]Rec. Doc. No. 23, Def.'s Ex. D, p.3 ("Sellers and Purchasers hereby acknowledge and recognize that this sale is in an "AS IS" condition, and accordingly, Purchasers do hereby relieve and release Sellers and all previous owners thereof from any and all claims for any vices or defects in said property, whether obvious or latent, known or unknown, easily discoverable or hidden, and particularly for any claim or cause of action for redhibition . . . .").

Furthermore, the notary who executed the Act of Sale explained that document to him.[38]

Plaintiff attacks the validity of the waiver by analogy to the facts in *Thibodeaux*. There, the plaintiff sued in redhibition to recover the price of a car purchased from the defendant. *Thibodeaux*, 364 So. 2d at 1370-71. The trial court found that the car had a defective frame and steering assembly at the time of sale. *Id.* at 1371. The bill of sale contained a waiver of warranty, which the trial court found ineffective: "Purchaser . . . does hereby waive the warranty of fitness or guarantee against the redhibitory vices applied in Louisiana by operation of law, more specifically, that warranty imposed by *Civil Code Article* 2476. . . . Additionally, I forfeit any right I may have in redhibition pursuant to *Civil Code Article* 2520 . . . ." *Id.* Upholding the trial court's decision, the Louisiana appellate court noted that the plaintiff was a woman with only a sixth grade education and that "[t]he language of this purported waiver is couched in legal terms, and not in terms which may be read and understood by a layman." *Id.* The plaintiff stated that she did not know the meaning of the legal terms in the waiver, and the defendant's salesman admitted that he did not did not explain the waiver to the plaintiff and that he did not even know what the waiver provisions meant. *Id.* at 1372.

Plaintiff was 22 years old when he purchased defendant's house.[39] He makes no claim that his education or reading ability in any way impaired his understanding of the waiver. Additionally, the waiver he signed appeared several times in the sale documents, and it included a number of explanatory phrases to develop the meaning of "waiver of redhibition." In Louisiana, it is "well settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other

---

[38]Rec. Doc. No. 30, Pl.'s Ex. 10, Aff. of Karen Mosca.

[39]Rec. Doc. No. 30, Pl.'s Ex. 2, p. 2.

13

party failed to explain it to him." *Aquillard v. Auction Mgmt. Corp.*, 908 So. 2d 1, 17 (La. 2005) (citation omitted). Plaintiff claims that, as a first time home buyer, he was unacquainted with the meaning and import of the term "redhibition." The Court, however, finds that the waiver he signed was adequate to put him on notice of consequences that would flow from his consent.

Plaintiff has failed to present evidence creating a genuine issue of material fact as to whether defendant knew of the house's defects prior to the sale. Plaintiff has also failed to present enough evidence to suggest that a genuine issue of material fact exists with regard to his knowing waiver of his rights in redhibition.[40] Because of these failures, the Courts finds that no reasonable jury could find plaintiff's waiver of redhibition void.

Accordingly,

**IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED**.

Houston, Texas, October __31__, 2005.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

---

[40] Because the Court finds no genuine issue of material fact with respect to plaintiff's waiver of his redhibitory rights, the Court finds no need to address the issue of whether plaintiff's claims are prescribed.