FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 NOV 22 PM 1:09

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRENT J. HOLLAND** | CIVIL ACTION |
| VERSUS | No. 04-3028 |
| **PROSPER P. BREAUX, et al.** | SECTION: I/5 |

### ORDER AND REASONS

The matter before the Court is a motion, filed on behalf of defendant, Great Northern Insurance Company ("Great Northern"), seeking summary judgment pursuant to Rule 56(c)[1] of the Federal Rules of Civil Procedure. Plaintiff, Brent Holland ("Holland"), opposes the motion. For the following reasons, defendant's motion for summary judgment is **GRANTED**.

### *BACKGROUND*

On May 16, 2000, plaintiff Holland paid $1,100,000 to purchase a house, located at 18120 Hosmer Mill Road, Covington, Louisiana, from Prosper Breaux.[2] In order to determine the replacement value of the home, plaintiff arranged for an appraisal of the property by Tony

---

[1] Rule 56(c) provides, in pertinent part, that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

[2] Rec. Doc. No. 31, pp. 1, 3.

1

Williamson, a representative of Chubb & Son. Plaintiff did not, however, have any structural assessment or formal inspection of the house performed before executing the sale.[3] Great Northern, a division of the Chubb Group of Insurance Companies,[4] issued a "Masterpiece" homeowners insurance policy covering the house, which became effective on the date of sale.[5] The policy contained two noteworthy exclusions:

> **Gradual or sudden loss.** We do not cover any loss caused by wear and tear, gradual deterioration, rust, fungi, bacteria, mold, corrosion, dry or wet rot, warping, insects or vermin. We also do not cover any loss caused by inherent vice, latent defect or mechanical breakdown. But we do insure ensuing covered loss unless another exclusion applies.[6]
>
> **Faulty planning, construction or maintenance.** We do not cover any loss caused by the faulty acts, errors or omissions of you or any other person in planning, construction or maintenance. It does not matter whether the faulty acts, errors or omissions take place on or off the insured property. But we do insure ensuing covered loss unless another exclusion applies. "Planning" includes zoning, placing, surveying, designing, compacting, setting specifications, developing property and establishing building codes or construction standards. "Construction" includes materials, workmanship, and parts or equipment used for construction or repair.[7]

In late November, 2003, plaintiff noticed that the walls in the house were cracking, the floor in two rooms was beginning to sag and separate, and doors were settling.[8] Plaintiff's initial investigation revealed that the floor joists and piers under the house were wet and rotted. Plaintiff

---

[3] Rec. Doc. No. 24, Def.'s Ex. F, p. 38.

[4] Rec. Doc. No. 31, Pl.'s Ex. 10, p. 7.

[5] Rec. Doc. No. 24, p. 7; Def.'s Ex. 1, p. 2.

[6] Rec. Doc. No. 24, Def.'s Ex. A, p. 22.

[7] Rec. Doc. No. 24, Def.'s Ex. A, p. 24.

[8] Rec. Doc. No. 31, p. 3.

found that untreated lumber had been used in the construction of the house and that poor drainage caused water to flow off the roof and under the house.[9] In addition, plaintiff found that a dryer exhaust was venting hot moist air into the crawl space below the house.[10]

Plaintiff submitted a claim to Great Northern on December 1, 2003. On December 15, 2005, defendant notified plaintiff that, because of the "gradual or sudden loss" exclusion in plaintiff's policy, plaintiff's claim might not be covered under the policy.[11] On January 31, 2004, Kevin Vanderbrook, a structural engineer retained by Great Northern, inspected the property and determined that the deterioration and rot in the house "resulted from faulty planning, construction and maintenance."[12] In March, 2004, a structural engineer retained by plaintiff, Darrell Fussell of H & H Engineering, Inc., also inspected the property.[13] On April 9, 2004, Great Northern notified plaintiff that his policy would not be renewed due to the overall physical condition of the home.[14]

Plaintiff filed his complaint against Prosper Breaux and Great Northern on November 5, 2004, alleging that the defendants' actions had caused "diminution in value of the home," repair costs, mental anguish, anxiety, and undue stress.[15] Plaintiff invokes this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff seeks damages "to compensate plaintiff for his injuries,

---

[9] Rec. Doc. No. 31, p. 3.

[10] Rec. Doc. No. 31, p. 3.

[11] Rec. Doc. No. 31, Pl.'s Ex. 3.

[12] Rec. Doc. No. 24, Def.'s Ex. C, p. 2.

[13] Rec. Doc. No. 31, Pl.'s Ex. 7.

[14] Rec. Doc. No. 31, Pl.'s Ex. 2.

[15] Rec. Doc. No. 1, ¶ 18.

losses, and damages, plus interest from date of judicial demand until paid and all costs of these proceedings."[16] On November 2, 2005, this Court granted defendant Proper Breaux's motion for summary judgment.[17]

Great Northern's motion for summary judgment presents two main arguments: (1) the damage to the house is not covered by plaintiff's policy because of the "faulty planning, construction, or maintenance" and the "gradual or sudden loss" exclusions, and (2) plaintiff's reliance on the appraisal of the house by Williamson, the Chubb & Son representative, was misplaced. Plaintiff opposes the motion.

## LAW AND ANALYSIS

### I. Standard of Law

Summary judgment is proper when, after reviewing the "pleadings, depositions, answers to interrogatories . . . [and] affidavits," the court determines that there is no issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266, 274 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323, 106 S. Ct. at

---

[16]Rec. Doc. No. 1, p. 4.

[17]Rec. Doc. No. 35.

2553, 91 L. Ed. 2d at 274; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986) (internal quotation omitted).

Once the party seeking the summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986). The showing of a genuine issue is not satisfied by creating some metaphysical doubt as to the material facts by conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211-12 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.*

*II. Arguments*

Defendant argues that the damage to plaintiff's house is clearly not covered by plaintiff's homeowners insurance policy because of the specific exclusions for "faulty planning, construction, or maintenance" and "gradual or sudden loss." Plaintiff admits that a reading of the "gradual or sudden loss" exclusion, by itself, "would seem to indicate that the Masterpiece policy

5

afford[s] no coverage for Holland's claim."[18] Plaintiff's opposition does not argue that the policy's exclusions do not apply. Instead, plaintiff challenges the construction of the insurance policy. Plaintiff's contention is that, read as a whole, the terms of the policy do cover the loss. Sitting in diversity pursuant to 28 U.S.C. § 1332, the Court will apply the substantive law of Louisiana, the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 822, 82 L. Ed. 1188, 1194 (1938).

### A. Damage from Dryer Exhaust

Plaintiff first attempts to create an issue of material fact by exposing what he views as an omission in defendant's assessment of the property and subsequent denial of coverage. Plaintiff notes that the affidavit provided by defendant's engineer, Kevin Vanderbrook, fails to identify the dryer exhaust as a contributing factor to the rot and deterioration in the house's foundation.[19] Plaintiff appears to argue that, because defendant relied on Vanderbrook's assessment in its decision to refuse coverage, an issue of material fact exists as to the cause of the damage to the house.

Plaintiff does not, however, explain why the damage caused by the dryer exhaust does not fall under the policy exclusion for "faulty planning, construction, or maintenance." In its motion, defendant cites plaintiff's engineer, Darrell Fussell, who confirmed that the dryer exhaust

---

[18]Rec. Doc. No. 31, p. 10. Plaintiff's brief does not appear to address defendant's primary argument that the "faulty planning, construction, or maintenance" exclusion in the policy precludes coverage.

[19]Rec. Doc. No. 31, p. 7.

6

contributed to the damage to the floor joists.[20] Defendant's motion argues that this exhaust was a design defect for which coverage is precluded by the insurance policy's exclusions. Plaintiff, though, neglects to present any argument in response. Because plaintiff has failed to allege any specific facts as to why damage from the dryer exhaust should not be excluded as a design defect, the Court finds plaintiff has created no genuine issue of material fact.

### B. House and Contents Coverage

Plaintiff next compares the "Deluxe House Coverage" section of the insurance policy with the "Standard Contents Coverage" section and notes that the contents coverage section specifically excludes damage from collapse, inadequate removal of water by sump pumps, and accidental discharge or overflow of water or steam. Plaintiff argues that the house coverage section, which fails to exclude or mention these causes of damage, should thus be deemed to cover loss from them.[21]

Plaintiff's arguments fail to show, however, that the collapse, inadequate sump pumps,

---

[20] Rec. Doc. No. 24, pp. 18-19; Def.'s Ex. D, p. 15.

[21] Rec. Doc. No. 31, pp. 10-12. Plaintiff's argument comparing the house and contents coverage sections adopts an *expressio unius est exclusio alterius* posture; that is, the expression of an exclusion in one section of the policy indicates the absence of that exclusion in another. *See* Black's Law Dictionary 603 (7th ed. 1999) (defining the Latin phrase as "[a] canon of construction holding that to express or include one thing implies the exclusion of the other, or of the alternative"). The Court does not find this interpretation binding, however, absent evidence that the policy's drafters intended such a construction. *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 386 n.23, 103 S. Ct. 683, 690 n.23, 74 L. Ed. 2d 548, 559 n.23 (1983) ("We also reject application of the maxim of statutory construction, *expressio unius est exclusio alterius*."); Reed Dickerson, *The Interpretation and Application of Statutes* 234-35 (1975) ("Far from being a rule, it is not even lexicographically accurate, because it is simply not true, generally, that the mere express conferral of a right or privilege in one kind of situation implies the denial of the equivalent right or privilege in other kinds.").

and dryer steam are not addressed by the policy exclusions. For example, plaintiff contends that "[e]vidence produced in this case indicates clearly that the floor of the billiards room collapsed. There is no exclusion for collapse, so the loss should be covered."[22] Plaintiff, however, does not provide specific facts to explain why this collapse is not the result of "faulty planning, construction, or maintenance," which is the core of defendant's motion. Without any specific facts, the Court cannot find that plaintiff has created a genuine issue of material fact with regard to the policy exclusions.

### C. "Ensuing Loss" Provisions

Finally, Holland challenges the clarity of the policy, arguing that the "ensuing loss" provisions in the policy's exclusions "create a never ending cycle of coverage questions that in themselves serve to make the policy ambiguous."[23] Plaintiff postulates that, even if the damage to the house's foundation was excluded by the "gradual or sudden loss" provision, the policy language attached to the exclusion–"But we do insure ensuing covered loss unless another exclusion applies"–mandates a determination that damage to unaffected parts of the house caused

---

[22] Rec. Doc. No. 31, p. 10. At several points in his brief, plaintiff refers to the "collapse" of the house. The verb "collapse" means "[t]o fall down or inward suddenly; cave in," and the noun is "[t]he act of falling down or inward . . . [a]n abrupt failure of function." American Heritage Dictionary 261 (1976). None of the facts that plaintiff presents to describe the collapse, however, support the suddenness with which these definitions characterized the term. Instead, plaintiff seems to be using the word "collapse" to dramatize what appears otherwise as a slow deterioration of the house and a similarly slow appearance of the defects. The Court will accept plaintiff's use of "collapse," though, as it does not affect the final determination of defendant's motion.

[23] Rec. Doc. No. 31, p. 13.

by repairs to the foundation be covered as an ensuing loss.[24]

The Court agrees that "[e]xclusions must be narrowly construed and any ambiguity should be construed in favor of coverage." *Great American Ins. Co. v. Gaspard*, 608 So. 2d 981, 984 (La. 1992); *see also Newby v. Jefferson Parish Sch. Bd.*, 738 So. 2d 93, 96 (La. App. 5th Cir. 1999) (summarizing *Breland v. Schilling*, 550 So. 2d 609 (La. 1989)). Plaintiff's interpretation of the policy's ensuing loss provisions, however, is not convincing.

The Fifth Circuit's most recent explication of ensuing loss coverage was in *Ochsner Medical Foundation v. Allendale Mutual Insurance* Co., 219 F.3d 501 (5th Cir. 2000). In that case, the plaintiff had purchased an all-risk insurance policy from defendant that insured several of plaintiff's properties, including one property under construction. *Ochsner*, 219 F.3d at 502-03. During construction of the property, plaintiff discovered that several of the concrete caps covering the building's foundation were cracking. *Id.* at 503. After attempting to repair the cracking, plaintiff discovered additional cracking and notified Allendale. *Id.* Allendale investigated the problems and denied coverage, citing exclusions in the insurance policy. *Id.* One exclusion read: "This policy does not insure against . . . faulty workmanship, material, construction, or design from any cause, unless physical damage not excluded by this Policy results, in which event, this Policy will cover only such resulting damage . . . ." *Id.* In its arguments, Ochsner did not deny that the damage to the building's foundation was the result of "faulty workmanship, material, construction, or design." *Id.* at 504. Instead, Ochsner argued that the damage fell under the policy language covering "resulting physical damage," which the court

---

[24]Rec. Doc. No. 31, pp. 13-14.

9

described as "an exception to the exclusions." *Id.* at 505. Ochsner contended that, while the original cracking of the foundation was not covered by the policy, the later cracking "constitute[d] 'resulting physical damage' not excluded, i.e., covered by the policy." *Id.*

The court, applying Louisiana law, found that the "resulting physical damage" clause "contemplated damage that is different in kind, not merely degree." *Id.* at 506. The court noted that "[a]ll-risk insurance policies generally are viewed as limiting recovery to those losses in which the cause is external to the structure insured, as opposed to an internal or inherent defect in the item of property which is damaged." *Id.* at 506 (citing *Couch on Insurance*, 3d § 148:59, at 148-104 (1998)) (internal quotations omitted). In *Ochsner*, the initial and subsequent cracking were not sufficiently disparate events: the "minor damage to the foundation [did] not 'cause' the more severe structural impairment. The cracking is the impairment; they are synonymous." *Id.*

In *U.S. Industries, Inc. v. Aetna Casualty & Surety Co.*, 690 F.2d 459 (5th Cir. 1982), another diversity case involving Louisiana substantive law, the Fifth Circuit also denied coverage for faulty workmanship despite an ensuing loss clause. There, the insured plaintiff had been hired to construct a steel tower composed of welded steel plates. *Id.* at 460. The final step in the construction involved heating the skin of the tower to a certain temperature to relive stress on the plates. *Id.* at 461. Because of excessive heat during this treatment, the tower developed imperfections and began to lean to one side. *Id.* The plaintiff's policy excluded loss from "faulty workmanship but not excluding resultant physical loss or damage to other property insured hereunder." *Id.* at 462 n.4. The plaintiff argued that the stress-relieving treatment was separate from the construction of the tower itself and, as such, "a fortuitous event extraneous to the

10

construction process . . . so as not to be within the faulty workmanship exclusion clause." *Id.* at 461. The court found that "the stress-relieving was as much an integral part of the construction of the tower as was the initial fabrication and welding" and that "faulty workmanship in the stress-relieving portion of the construction of the tower . . . was as much 'faulty workmanship' as would have been the concededly excluded defective welding in the initial phases of construction." *Id.* at 462 n.4.

An earlier Fifth Circuit case, albeit one involving Texas law, reveals the same reasoning with facts particularly analogous to those before the Court. In *Aetna Casualty & Surety Co. v. Yates*, plaintiffs sued to recover for damage to their home under an all-risk homeowners policy issued by Aetna. 344 F.2d 939, 940 (5th Cir. 1965). Plaintiffs discovered that "the joists, sills and subflooring of their home were almost completely rotted away" due to inadequate ventilation in the home's crawl space. *Id.* Their insurance policy excluded "[l]oss caused by inherent vice, wear and tear, deterioration; rust, rot, mould [sic] or other fungi; dampness of atmosphere, [and] extremes of temperature." *Id.* at 940-41. These exclusions, however, did not apply to "ensuing loss caused by collapse of building . . . [or] water damage . . . provided such losses would otherwise be covered under this policy." *Id.* at 941.

The plaintiffs argued that, because their damage was caused by the condensation of moist air into water, this "exclusion from the exclusion" covered their loss. *Id.* The Fifth Circuit, however, found otherwise. The court found that plaintiff's reading of the policy would "require that rot and water damage be in some sense separable events." *Id.* The court refused to adopt this reading, declaring instead that "[w]e do not think that a single phenomenon that is clearly an

excluded risk under the policy was meant to become compensable because in a philosophical sense it can also be classified as water damage." *Id.*; *see also Holden v. Connex-Metalna*, 1999 U.S. Dist. LEXIS 18714, at *6 (E.D. La. Nov. 23, 1999), *rev'd in part on other grounds*, 203 F.3d 358 (5th Cir. 2002) (reviewing Fifth Circuit "ensuing loss" jurisprudence and finding: (1) damage that falls under the exclusion and the ensuing damage must be separable events and different in kind, not degree, and (2) the fact that an excluded event is the proximate cause of the ensuing loss does not necessarily preclude coverage, *inter alia*).

Plaintiff's arguments ignore the "ensuing loss" case law. The "ensuing loss" provisions in the policy's exclusions do not make the policy ambiguous, but instead provide coverage for loss that is separate and extraneous from the original damage. The floor of the house, which sagged because of the rotting foundation, would not be covered by the "ensuing loss" provision because the floor damage is not separable from the damage to the house's foundation. Likewise, the damaged walls and door frames that sagged because of the rotting foundation cannot be analyzed separately from the damaged foundation.

Plaintiff insists that "these conditions were not caused by the rot or gradual deterioration, but were instead caused by the collapse resulting from the rot and deterioration."[25] Plaintiff, though, has failed to show how this collapse is distinct from the damage to the foundation of the house. The rot and deterioration are not "different in kind," *Ochsner*, 219 F.3d at 506, from the subsequent collapse and sagging floors, and the sagging floors and doors were not caused by any extraneous event separate from the rotting foundation. Plaintiff has failed to create a genuine

---

[25]Rec. Doc. No. 31, p. 14.

issue of material fact as his arguments do not present any specific factual support that would demonstrate why the "ensuing loss" provisions provide coverage for any damage to the house or why these provisions make the policy ambiguous.[26]

Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is **GRANTED**.

Houston, Texas, November ___17___, 2005.

LANCE M. AFRICK
**UNITED STATES DISTRICT JUDGE**

---

[26]Defendant also argues that plaintiff's reliance on the property appraisal by Tony Williamson, an employee of Chubb & Son, was improper. Rec. Doc. No. 24, pp. 22-25. Plaintiff does not address this argument in his opposition, nor does the Court find this issue necessary to its decision.